IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ADRIAN SEDILLO,

    Plaintiff,

vs.                                                                                     No. 1:20-cv-01019-KWR-LF

NEW MEXICO DEPARTMENT OF
CORRECTIONS *et al.*,

    Defendants.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** is before the Court on Plaintiff's Motion to Amend Complaint and Add Parties and Additional Claims ("Motion"). **Doc. 31.** Plaintiff originally filed this lawsuit in state district court in July 2020, bringing claims for damages he alleges resulted from a slip-and-fall accident that occurred while he was incarcerated at the Northeast New Mexico Detention Facility ("NENMDF"). *See* **Doc. 1-1.** Plaintiff seeks leave to amend his complaint to join new parties and add a new claim. *See* **Doc. 31.** Defendants oppose the Motion in part. *See* **Docs. 34, 36.**

Having reviewed the Motion, the response briefs, and the record, and being otherwise fully advised, the Court **FINDS** that the Motion is **WELL-TAKEN** and should be **GRANTED.**

**BACKGROUND**

On July 23, 2018, Plaintiff slipped and fell on water from a roof leak while he was on his way to the shower facilities at NENMDF. **Doc 1-1 at ¶ 19.** After falling, Plaintiff experienced immediate, sharp pain coming from his lower back and neck and could not move or get up. *Id.* **¶ 21.** NENMDF personnel placed him on a stretcher but failed to strap him onto it. *Id.* **¶¶ 21–22.** While Plaintiff was being transported to the on-site medical facility, he was dropped off the stretcher and fell halfway down a set of stairs. *Id.* **¶ 22.** Plaintiff suffered permanent back, neck,

1

hip, and nerve damage, as well as emotional distress and anxiety, as a result of not only the injuries he sustained in the accident but also the lack of adequate and reasonable medical care to assist him in recovering from the injuries. *Id.* ¶¶ **24, 26.**

Plaintiff originally brought various negligence claims, as well as an 8th Amendment deliberate indifference claim and a breach of contract claim, against six defendants: (1) the New Mexico Corrections Department ("NMCD"), (2) The GEO Group, Inc., which was the private operator of NENMDF at the time, (3) George C. Zoley, CEO of The GEO Group, Inc., (4) the Town of Clayton, NM, which constructed and owns NENMDF, (5) Sergeant Dominic Demchek, a guard at NENMDF, and (6) Correctional Officer Paul Griffith, also a guard at NENMDF. *Id.* **at 2–3, 8–16.** Following removal to this Court, the parties agreed to dismiss with prejudice George Zoley and the breach of contract claim. *See* **Docs. 26, 27, 29.**

At the time he filed his lawsuit, Plaintiff was no longer incarcerated at NENMDF. *See* **Doc. 1-1 at 1 (¶ 1).** However, in December 2020, he was returned to NENMDF on an alleged probation violation. *See* **Doc. 31 at 2 (¶ 9).** According to Plaintiff, he was placed in solitary confinement for 75 days between January and March 2021 in "retaliation for filing the present lawsuit" and in "an ongoing attempt to silence him from advocating for reasonable treatment and adequate conditions of confinement[.]" *Id.* **at 17 (¶ 66), 19 (¶¶ 84, 85).** Timothy Hatch was the warden of NENMDF at the time. *Id.* **at 9 (¶ 16).** Plaintiff previously sued Warden Hatch (and others) in 2014 in connection with sexual abuse claims against a prison doctor brought by Plaintiff and other prisoners. *Id.* **at 20 (¶¶ 87–88).** Because of his involvement in the prior case, which settled, Warden Hatch "knew of Plaintiff's diagnosed mental health disabilities . . . and medical diagnosis of PTSD and clinical depression[.]" *Id.* **(¶¶ 89–90).** During Plaintiff's placement in solitary confinement, he was denied adequate access to medical and mental health care. *See id.* **at 37**

**(¶ 204).** He was also denied basic personal hygiene products (toothpaste, shampoo, deodorant), provided food of such poor quality and insufficient quantity that he lost 20 pounds, and had phone and other privileges taken away. *See id.* **at 17–18.** This was all done in "retaliation against Plaintiff" and to "punish," as well as "intimidate and coerce," him. *Id.* **at 39 (¶¶ 213–14).** Plaintiff filed grievances, but they "were not getting turned in and were disregarded by employees of the NMCD in violation of NMCD policies." *Id.* **at 21 (¶ 98).** Prison employees "indicated to him that he was being punished for being perceived as a troublemaker for his grievances about the food and inadequate medical care." *Id.* **at 19 (¶ 82).** Plaintiff's placement in solitary confinement ended in March 2021 when was transferred out of NENMDF, but he alleges that he experiences "continued pain and exacerbation of his emotional distress and PTSD" as a result of the conditions to which he was subjected and Defendants' continued deliberate indifference to his medical needs during his reincarceration. *See id.* **at 19 (¶ 84), 22 (¶ 105[1]), 33 (¶ 189).**

On April 15, 2021, Plaintiff filed the Motion presently before the Court.[2] *See* **Doc. 31.** He seeks leave to join as parties (1) Centurion Correctional Healthcare of NM, which was contracted to provide medical services at NENMDF at the time of the accident, (2) Lang Chhour, a nurse who provided medical care to Plaintiff after his accident, and (3) Warden Hatch. *See id.* **at 2, 7, 9, 10.** He also seeks leave to add a new claim for "Retaliation in Violation of Civil Right to Redress Grievances Pursuant to 42 USC [sic] Section 1983 and Violations of the Restricted Housing Act" based on Warden Hatch's allegedly retaliatory conduct. *See id.* **at 2, 34.** Plaintiff's proposed amended complaint additionally includes new factual allegations to support an expansion of his original 8th Amendment deliberate indifference claim to include Defendants' alleged failure to

---

[1] Paragraph 105 states that Plaintiff was released from Restricted Housing "in late March 2020[,]" which the Court assumes should be March 202*1*. *See* **Doc. 31 at 21 (¶ 97).**
[2] April 15, 2021 was the deadline set in the case management order for Plaintiff to seek leave to amend his complaint and join additional parties. *See* **Doc. 23 at 2.**

provide adequate medical care to Plaintiff during his reincarceration, which he alleges has resulted in an exacerbation of the injuries he sustained from the accident as well as additional damages. *Compare* **Doc. 1-1 at 13–15,** *with* **Doc. 31 at 30–33.**

Defendants[3] do not oppose Plaintiff's request to join Centurion and Lang Chhour as parties. *See* **Doc. 34 at 2; Doc. 36 at 1–2.** They also raise no objection to Plaintiff's proposed expansion of his 8th Amendment deliberate indifference claim. *See generally* **Docs. 34, 36.** However, they oppose Plaintiff's requests to join Warden Hatch as a party and add a new claim based on Warden Hatch's allegedly retaliatory conduct. *See* **Doc. 34 at 2–3, 4–5; Doc. 36 at 2–4.**

## APPLICABLE LAW

"[T]he grant or denial of an opportunity to amend is within the discretion of the [d]istrict [c]ourt[.]" *Foman v. Davis*, 371 U.S. 178, 182 (1962). Under Federal Rule of Civil Procedure 15, "[t]he court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). "Refusing leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Bylin v. Billings*, 568 F.3d 1224, 1229 (10th Cir. 2009) (quotation marks and citation omitted). The most important factor in deciding a motion to amend the pleadings is "whether the amendment would prejudice the nonmoving party." *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1207 (10th Cir. 2006); *cf. Bylin*, 568 F.3d at 1229 ("Rule 15 was designed to facilitate the amendment of pleadings except where prejudice to the opposing party would result." (alteration, quotation marks, and citation omitted)). "Courts

---

[3] Defendants The GEO Group, Inc., Dominic Demchek, and Paul Griffith (collectively "the GEO Defendants"), as well as the Town of Clayton, filed a joint response to the Motion. *See* **Doc. 36.** Defendant New Mexico Corrections Department ("NMCD") filed a separate response. *See* **Doc. 34.** The respective positions and arguments advanced in the two responses are largely congruent and, except where the arguments diverge, will be discussed together, referring to "Defendants" collectively.

4

typically find prejudice only when the amendment unfairly affects the defendants in terms of preparing their defense to the amendment." *Minter*, 451 F.3d at 1208 (quotation marks and citation omitted). "Most often, this occurs when the amended claims arise out of a subject matter different from what was set forth in the complaint and raise significant new factual issues." *Id.*

## DISCUSSION

Defendants argue that the Court should deny Plaintiff's request to join Warden Hatch and bring the new claim because allowing their inclusion in this lawsuit will unduly prejudice Defendants. Defendant NMCD additionally argues that allowing the addition of the new claim would be futile because Plaintiff has not alleged that he exhausted his administrative remedies. The Court considers these arguments in turn.

I. **Prejudice**

Defendants contend that allowing Plaintiff to add a claim based on Warden Hatch's allegedly retaliatory conduct "would unduly complicate and prolong" this case and be "unduly prejudicial to" them. *See* **Doc. 34 at 4; Doc. 36 at 4.** Initially, the Court notes that the parties are still in the early stages of litigation, Plaintiff filed his motion within the deadline for seeking leave to amend and join parties, and discovery is not set to terminate until October 8, 2021. *See* **Doc. 23 at 2.** The Court fails to see—and Defendants fail to explain—how allowing Plaintiff to add the new claim will prolong this case. To the extent Defendants argue that they will be prejudiced by an unspecified delay caused by the addition of the new claim, that argument is unavailing.

Turning, then, to the main focus of Defendants' prejudice argument, Defendants contend that because Warden Hatch was not the warden of NENMDF at the time of Plaintiff's slip-and-fall accident, and because the conduct at issue in the new claim occurred more than two years after the accident, they will be prejudiced by having to defend against a claim that is "remote from" and

only "tangentially" related to Plaintiff's other claims. **Doc. 34 at 4; Doc. 36 at 4.** Defendants characterize the new claim Plaintiff seeks to add as having "no relation to the claims asserted in his Complaint" and arising "out of a different subject matter than what was alleged in the original Complaint[.]" **Doc. 34 at 4; Doc. 36 at 3.** The Court disagrees with these characterizations.

Defendants' argument is predicated on a narrow view of the subject matter of this lawsuit, one that limits Plaintiff's claims to the slip-and-fall accident itself and to the care Plaintiff received immediately following the accident. But the subject matter of Plaintiff's original complaint clearly encompasses more than negligence claims related to the operation and maintenance of NENMDF and the medical care provided to Plaintiff after his accident. Specifically, Count IV of the original complaint contains an 8th Amendment claim premised on Defendants' alleged deliberate indifference to Plaintiff's ongoing medical needs arising from the injuries he sustained in the accident. *See* **Doc. 1-1 at 13–14.** As previously noted, Plaintiff's proposed amended complaint in fact seeks to expand Count IV based on new allegations of continuing failures to provide adequate medical care to Plaintiff during his recent reincarceration at NENMDF. The new allegations include that Defendant NMCD routinely ignores, destroys, and fails to process medical grievances and that as a result of Defendants' ongoing deliberate indifference to Plaintiff's medical needs, Plaintiff has not only suffered the exacerbation of his existing injuries but also sustained new ones. *See* **Doc. 31 at 32–33.** Defendants have not objected to the inclusion of these allegations and do not argue that they will be prejudiced by the expansion of the 8th Amendment claim brought under Count IV.

Count VI of the proposed amended complaint, in which Plaintiff seeks to bring a new 8th Amendment claim based on Warden Hatch's allegedly retaliatory conduct, is closely related to and shares many of the factual underpinnings supporting the expanded Count IV. Though the

specific legal theories differ, both Counts allege that Plaintiff has been subjected to different forms of cruel and unusual punishment while in Defendant NMCD's custody at NENMDF. And both Counts are based, at least in part, on common factual issues, such as Defendants' alleged denial of adequate medical care to Plaintiff and Defendants' handling of Plaintiff's grievances during his recent reincarceration. Given that significant overlap exists between the expanded claim in Count IV and the new claim in Count VI, it is unclear how Defendants will be unduly prejudiced by inclusion of the latter but not the former. As to this critical question, Defendants offer no explanation or argument at all.

On the record before it, the Court concludes that Defendants have failed to demonstrate that they will be unduly prejudiced by the addition of the new claim. The mere temporal remoteness of the alleged conduct that underlies the new claim—the only basis Defendants identify in support of their conclusory contention that the new claim arises out of a subject matter different than the original complaint—is insufficient to support finding that Defendants will be unfairly affected in their ability to prepare their defense to the amended complaint.[4] There being no showing of undue prejudice, the Court concludes that prejudice is not a proper basis for refusing Plaintiff leave to amend and bring the new claim.

## II.   Futility

Defendant NMCD alternatively argues that Plaintiff should be denied leave to add the new claim because he has not alleged that he exhausted available administrative procedures, which Defendant NMCD contends makes addition of the claim futile. *See Anderson v. Suiters*, 499 F.3d 1228, 1238 (10th Cir. 2007) ("A proposed amendment is futile if the complaint, as amended, would

---

[4] Indeed, given that the new claim is brought against only Warden Hatch and Defendant NMCD, it is unclear on what basis the GEO Defendants and the Town of Clayton claim undue prejudice. *Cf. Minter*, 451 F.3d at 1208 ("Courts typically find prejudice only when the amendment unfairly affects the defendants in terms of preparing their defense to the amendment." (quotation marks and citation omitted)).

be subject to dismissal." (quotation marks and citation omitted)). While true that, under the Prison Litigation Reform Act ("PLRA"), prisoners are required to exhaust administrative remedies before bringing a § 1983 claim, Plaintiff's failure to allege that he exhausted available administrative procedures does not render the proposed amendment futile. *Cf. Jones v. Bock*, 549 U.S. 199, 203 (2007) (holding that the PLRA does not require a plaintiff to allege and demonstrate exhaustion in his complaint). Indeed, failure to exhaust is an affirmative defense, not a pleading requirement. *See id.* at 216 ("We conclude that failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints.").

Additionally, whether a plaintiff has exhausted his administrative remedies before filing suit is necessarily a fact-specific inquiry. *See Little v. Jones*, 607 F.3d 1245, 1249 (10th Cir. 2010) ("Because the prison's procedural requirements define the steps necessary for exhaustion, . . . an inmate may only exhaust by properly following all of the steps laid out in the prison system's grievance procedure."). Here, Plaintiff has alleged that "grievances [he] tried to file or disciplinary actions he attempted to appeal were not getting turned in and were disregarded by employees of the NMCD in violation of NMCD policies." **Doc. 31 at 21 (¶ 98).** Notably, "the failure to respond to a grievance within the time limits contained in the grievance policy renders an administrative remedy unavailable[.]" *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002). Defendant NMCD has neither shown what the applicable administrative procedures are nor demonstrated that Plaintiff failed to exhaust them. Defendant NMCD's futility argument thus fails not only legally but also factually.

## CONCLUSION

Defendants have failed to show that they will be unduly prejudiced by allowing Plaintiff to join Warden Hatch and add a new claim, or that addition of the new claim would be futile.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Amend Complaint and Add Parties and Additional Claims, **Doc. 31**, is **GRANTED.**

**IT IS FURTHER ORDERED** that Plaintiff may file the proposed amended complaint attached to the Motion **within sixty (60) days of the entry of this order.**

**IT IS SO ORDERED.**

_____
**KEA W. RIGGS
UNITED STATES DISTRICT JUDGE**